In re George E. EICHORN, Debtor.

George E. EICHORN, Plaintiff,

v.

Mark H. KOVEY & Eileen S. Mackler, Co-Executors of the Estate of Isadore Kovey, Defendants.

Bankruptcy No. 80–00161–JG.
Adv. No. A80–0459.

United States Bankruptcy Court,
D. Massachusetts.

May 18, 1981.

---

Frank A. Crosson, Richmond, Rosen, Crosson & Resnek, Boston, Mass., for plaintiff.

George S. Sarados, Stoughton, Mass., for defendants.

### MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The debtor, George E. Eichorn, filed this complaint to discharge an attachment of real estate obtained by the Estate of Isadore Kovey. The co-executors of the estate have been named defendants herein.

The plaintiff alleges that the real estate attachment, filed in Norfolk County Registry of Deeds,[1] is a preference under 11 U.S.C. Section 547(b) which may be avoided. Section 547 states, in relevant part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; . . .

.      .      .      .      .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title

The parties have stipulated to, and this court finds, the following facts:

— $25,000 demand note, dated October 11, 1977, payable to Isadore L. Kovey and executed by George E. Eichorn.

— $5,000 demand note, dated April 28, 1978 payable to Merchant's National Bank or I.L. Kovey, and executed by George E. Eichorn.

— attempts at collection of the notes by the executors of the Kovey estate from and after January, 1979.

— commencement of civil action # 31385 in Commonwealth of Massachusetts, District Court of Southern Norfolk, on or about October 24, 1979 (Mark H. Kovey and Eileen S. Mackler, as co-executors of the Estate of Isadore L. Kovey, deceased, v. George E. Eichorn)

— writ of attachment; order to attach, issued November 15, 1979.

— Real Estate attachment in Norfolk Registry of Deeds, November 20, 1979.

— Chapter 11 petition filed by George E. Eichorn, February 4, 1980.

■ Since the attachment is a transfer,[2] obtained on account of an antecedent debt, which would enable the creditor to be a secured creditor rather than an unsecured creditor entitled to pro rata distribution in the debtor's Plan of Arrangement[3]—the only outstanding issues of fact in contention are whether or not a transfer was made within 90 days of filing and whether the debtor was insolvent at the time of said attachment.

■ The defendants have argued that the operative date of the transfer should, in

---

1. Writ of Attachment filed; Norfolk Registry of Deeds, Book 5678, page 184.

2. 11 U.S.C. Section 101(40) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest. See also: *124 Cong.Rec.H. 11,090* (Sept. 28, 1978); *S17,407* (Oct. 6, 1978) and 11 U.S.C. Sec. 547(e).

3. Debtor has offered a 20% Payment to unsecured creditors in his Plan of Arrangement.

equity, be considered to be in October, 1979, the date when the lawsuit was commenced. This court, however, knows of no legal theory to support such a contention, and no authorities on point have been cited. Accordingly this court finds the transfer occurred on the date that the attachment was filed in the appropriate Registry of Deeds, on November 20, 1979, which date is within 90 days of Mr. Eichorn's filing his chapter 11 petition.

■ The sole remaining issue, therefore, is whether the debtor was solvent on the operative date, as the defendant contends. Insolvency is determined by a balance sheet test in accordance with the provisions of 11 U.S.C. Section 101(26)(A):

Insolvent means—

(A) with reference to an entity other than a partnership, financial condition such that the sum of each entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—
(i) property transferred, concealed, or removed with intent to hinder, delay or defraud such entity's creditors; and
(ii) property that may be exempted from property of the estate under section 522 of this title.

The Code further clothes the debtor with a presumption of insolvency on and during the 90 days immediately preceding filing of the petition see: 11 U.S.C. Section 547(e)(4). The Legislative History clarifies that this presumption is rebuttable and is not intended to shift the ultimate burden of persuasion. *House Report No. 95–595*, 95th Cong. 1st Sess. (1977) 375; *Senate Report No. 95–989*, 95th Cong.2d Sess. (1978) 89, U.S. Code Cong. & Admin.News 1978, p. 5787. It merely requires the party against whom the presumption exists to come forward with some evidence, in accordance with Rule 301 of the Federal Rules of Evidence:[4]

In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption

imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

I find that the defendants did introduce evidence which contradicted the presumed fact. Defendants introduced a letter from Mr. Eichorn, the debtor, dated January 9, 1980, wherein Mr. Eichorn stated: "In response to your question regarding the value of my property, the property is worth $2,463,000, the mortgage debt is $1,577,000, with the resultant equity being $886,000." (Defendant's Exhibit # 1) I find the letter may have been good cause for the defendants to believe that Mr. Eichorn was solvent on or about January 9, 1980. However, this court finds that at all relevant times, the debtor was in fact, insolvent.

Although in Mr. Eichorn's letter he valued his properties at $2.463 million, I find his valuation to have been overly optimistic. From the facts adduced at trial, the fair market value of the combined properties on November 20, 1979, was at least $693,000 less than the value stated in the January 9, 1980 letter.[5] Furthermore, the estimation of value included the debtor's wife's interest in two parcels of property held jointly, which interest is not properly includable when determining the solvency of Mr. Eichorn, personally. It was further adduced that the $1.577 million mortgage debt referred to in the letter applied only to the outstanding principal balance and did not include other liabilities such as interest, taxes or late charges; nor did it include approximately $880,000 of unsecured debt.

Accordingly, I find that on November 20, 1979, the operative date of defendant's attachment, this debtor was insolvent. Based upon the above findings of fact, the application of the law is clear. The attachment

---

4. made applicable in bankruptcy cases by sections 251 & 252 of the Bankruptcy Reform Act of 1978.

5. The value of the properties was determined not to have materially changed between Nov. 20, 1979 and Jan. 9, 1980.

obtained by these defendants is a preference in accordance with Section 547(b) of the Bankruptcy Code, and may be avoided. It is therefore ORDERED that the aforesaid attachment be dissolved.